**United States District Court**
**District of Massachusetts**

_____
                                )
CAROLE H. VENTURA,              )
        Plaintiff,              )
                                )
        v.                      )        Civil Action No.
                                )        07-10500-NMG
DAVID HANITCHAK and PARTNERS    )
HEALTHCARE SYSTEM, INC.,        )
        Defendants.             )
_____ )

**MEMORANDUM & ORDER**

GORTON, J.

<u>Pro se</u> plaintiff Carole H. Ventura ("Ventura") has brought suit against her former employer, Partners Healthcare Systems, Inc. ("PHS"), and former supervisor, David Hanitchak ("Hanitchak"), alleging discrimination, retaliation and harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA") and the Age Discrimination in Employment Act ("ADEA"). Before the Court is defendants' motion for summary judgment.

I. **Background**

The evidence in the record is summarized as follows:[1]

PHS is an integrated health care system that includes

_____

[1] The plaintiff has not submitted a Local Rule 56.1 Concise Statement of Material Facts but her objections to the defendants' Rule 56.1 Statement are noted herein. The facts set forth in the defendants' Statement which have not been controverted by the plaintiff are deemed admitted. <u>See</u> L.R. 56.1.

physicians, hospitals and community health centers.  Hanitchak is
employed by PHS as director of Planning and Construction ("P&C")
at Massachusetts General Hospital ("MGH") in Boston,
Massachusetts.  P&C is responsible for the strategic facility
planning and project management at MGH.  Its responsibilities
include planning and designing building projects, hiring
architects and buying medical equipment.

Ventura was employed by PHS as Hanitchak's executive
assistant from 1996 to early 2002.  In that role, Ventura was
charged with scheduling meetings between Hanitchak and other
members of P&C's staff, providing computer training and support
to P&C employees, reviewing incoming correspondence, maintaining
P&C's file system, distributing meeting minutes and coordinating
shop drawings.  Ventura worked efficiently and reliably, and her
assistance was crucial to the smooth functioning of the office.

On January 31, 2002, Ventura informed Hanitchak that she
felt ill and he encouraged her to take the afternoon off.
Ventura did not return the next day and instead, approximately
one week later, submitted a letter from her doctor stating that
she was "unable to work at th[at] time" but would likely return
in a week.  Ventura did not, however, return the following week
and submitted another doctor's note indicating that she had
"medical condition" and that her return date was uncertain.

In February, 2002, Ventura applied for disability benefits

-2-

under the Family Medical Leave Act ("FMLA") and was granted a 12-week medical leave of absence.  Towards the end of those 12 weeks, Ventura contacted Hanitchak and requested five additional weeks of leave to recover from severe depression.  Hanitchak granted the request based, in part, on Ventura's assurance that she would return to work no later than June 3, 2002.

At the end of May, 2002, however, Ventura informed Hanitchak that she would not be able to return until the end of the following month because she needed to undergo additional testing for sleep apnea and narcolepsy.  Ventura's absence, by that point, was causing severe disruption to the office.  Hanitchak had hired four different temporary workers but none was able to perform Ventura's duties effectively.  Those duties required familiarity with P&C's ongoing projects and the members of the project teams.

Finally, Hanitchak determined that the office could no longer sustain the disruptions posed by Ventura's prolonged absence.  He informed her in letter dated June 12, 2002, that he would not hold her post open indefinitely and would seek a full-time employee to fill the position.  He emphasized, however, that once Ventura was ready to return to work, she could re-apply for her former position (or any other available position within the organization), though he could not guarantee such a placement. He also noted that Ventura's "talents [were] much appreciated"

and that he would he "happy to give [her] a strong reference."
In an email dated June 14, 2010, a Human Resources ("HR")
representative, Deborah Carlson, clarified that Ventura's
employment had not been terminated and that she could remain on
medical leave as long as she qualified.  That way, she could
continue to receive disability benefits and accrue seniority
credits at PHS.

Ventura and Hanitchak met on June 18, 2002, to discuss the
situation.  At the meeting, Hanitchak reiterated his willingness
to serve as a reference should Ventura choose to apply for a
position within PHS.  He also informed her that, pursuant to
company policy, she would need to provide a letter of medical
clearance and complete the occupational health leave of absence
process before she could return to PHS.

Ventura asserts that, at that meeting, Hanitchak berated her
and told her to leave the facility without speaking to any of her
former co-workers.  She claims that Hanitchak's harsh treatment
was merely an example of a pattern of abuse she had suffered at
the hands of her co-workers during the period preceding her leave
of absence.  She also maintains that Hanitchak was notified of
the behavior of her co-workers but refused to intervene on her
behalf.  At several points, Ventura suggests that the workplace
hostility ultimately caused her depression which, in turn, forced
her to take extended medical leave and ultimately led to her

termination.

Although Ventura acknowledges that she was given the
opportunity to apply for available positions within PHS, Ventura
asserts that the HR Department refused to offer her meaningful
assistance with those applications.  Ventura has not, however,
substantiated that claim whereas the defendants have submitted
several emails and affidavits documenting their efforts to help
Ventura with her job search.

PHS posted Ventura's former position in July, 2002.  Ventura
never re-applied for that position or any other position at PHS
and, in November, 2002, her position was filled by a new
employee.  Ventura alleges that her replacement was a "woman in
her mid-twenties" but has not produced any documentation to
support that allegation.  The defendants deny that Ventura's
replacement was in her mid-20s but have not indicated her age.

In December, 2002, Ventura filed a claim with the
Massachusetts Commission Against Discrimination ("MCAD") and the
Equal Employment Opportunities Commission ("EEOC") alleging that
PHS discriminated against her on the basis of age and disability.
In January, 2006, the MCAD dismissed Ventura's claim, finding she
could not make out a prima face case of discrimination.  The EEOC
adopted that finding in December, 2006, and issued Ventura a
right-to-sue letter.

In March, 2007, Ventura filed the instant complaint

-5-

asserting violations of Title VII, the ADA and the ADEA.  In
March, 2010 (after the completion of discovery), the defendants
filed a motion for summary judgment on all claims against them.
Ventura opposed the defendants' motion and filed various
responsive pleadings containing additional factual and legal
assertions.  Much of the material, however, is repetitive of the
exhibits submitted by the defendants, including letters from
Ventura's doctor and various correspondence between Ventura,
Hanitchak and Carlson.  Ventura has also submitted work
evaluations, dating back to the early 1980s, which attest to her
good work habits, as well as notes taken by a counselor with whom
she spoke about the alleged workplace hostility.

Notably, Ventura has submitted no medical documentation
establishing the scope and existence of her alleged disability,
nor has she proffered any evidence that she was discriminated
against.

## II.  <u>Analysis</u>

### A.   **Legal Standard**

The role of summary judgment is "to pierce the pleadings and
to assess the proof in order to see whether there is a genuine
need for trial." <u>Mesnick</u> v. <u>General Elec. Co.</u>, 950 F.2d 816, 822
(1st Cir. 1991)(<u>citing</u> <u>Garside</u> v. <u>Osco Drug, Inc.</u>, 895 F.2d 46,
50 (1st Cir. 1990)).  The burden is upon the moving party to
show, based upon the pleadings, discovery and affidavits, "that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).

If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

B. **Application**

1. **Claims Asserted Against Hanitchak Individually**

The plaintiff has asserted individual claims against

Hanitchak under Title VII, the ADA and the ADEA.  None of those statutes, however, provide for individual liability.  <u>See</u> <u>Fantini</u> v. <u>Salem State Coll.</u>, 557 F.3d 22, 30 (1st Cir. 2009) ("there is no individual liability under Title VII"); <u>Orell</u> v. <u>U. Mass. Memorial Medical Ctr., Inc.</u>, 203 F. Supp. 2d 52, 64 (D. Mass. 2002) (holding that individuals cannot be liable under either the ADA or ADEA).  Accordingly, all claims against Hanitchak will be dismissed.

### 2.   Claims Asserted Against PHS

#### a.   Age Discrimination in Employment Act (ADEA)

The ADEA makes it unlawful for an employer

> to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

29 U.S.C. § 623(a)(1).

The ADEA engenders a shifting burden of proof.  First, the plaintiff must establish a prima facie case of age discrimination.  Under the "McDonnell Douglas test," the plaintiff must demonstrate that she 1) is over 40 years of age, 2) has been demoted or discharged, 3) was qualified to perform the job from which she was terminated and 4) was replaced by someone with similar qualifications to her own, demonstrating the employer's continuing need to fill the position.  <u>See</u>, <u>e.g.</u>, <u>Keisling</u> v. <u>SER-Jobs for Progress</u>, 19 F.3d 755, 760 (1st Cir. 1994) (<u>citing</u> <u>McDonnell Douglas Corp.</u> v. <u>Green</u>, 411 U.S. 792

-8-

(1973) (enunciating the standard for discrimination cases))[2].

If the plaintiff can make out a prima facie case, the burden then shifts to the employer to articulate a non-discriminatory reason for the plaintiff's termination.  Menard v. First Sec. Services Corp., 848 F.2d 281, 285 (1st Cir. 1988).  If the defendant can articulate a valid reason for the termination, the plaintiff must then prove, by a preponderance of the evidence, that "the defendant's true motive was age discrimination," i.e., that but for her age, the plaintiff would not have been terminated.  Id.

Here, Ventura has not made out a prima facie case of age discrimination.  Although she was 46 years old at the time of the alleged termination, which places her in the ADEA's protected class, she has not demonstrated that she was actually discharged from PHS or that she was still qualified to perform her job.

As discussed above, the defendants have proffered ample evidence demonstrating that Ventura was never actually discharged but remained on leave of absence status.  PHS held her position open for her for 17 weeks and, once it determined that it would seek a permanent replacement, it encouraged her to re-apply and even gave her assistance in doing so.  Ventura has not produced

_____

[2] Notably, the First Circuit does not require a plaintiff to establish, as an element of her prima facie case, that she was replaced by an individual younger than herself, or by someone outside the protected class.  Keisling, 19 F.3d at 760 n.10.

any evidence to dispute those facts and even acknowledges that she was kept within the PHS system on leave of absence.

Moreover, the record indicates that Ventura no longer met her employer's minimum job expectations.  The position of executive assistant is vital to the smooth functioning of P&C and requires daily, on-site attendance, which Ventura could no longer provide.  Although Ventura had previously been an effective assistant, her prolonged and ambiguous absences caused disruption and inefficiency in the office.  See Quintilliani v. Massachusetts Bay Transp. Authority, 2000 WL 1801841, at *3 (D. Mass. Nov. 29, 2000) ("Employers, with rare exception consider regular attendance an express condition of employment").  Moreover, Ventura could not return to work until she procured a letter of medical clearance which she did not do until Mid-July, 2002, more than one month after she was notified that PHS was seeking to fill her position.

Even if the Court were to find prima facie case of age discrimination, PHS has articulated a legitimate and non-discriminatory reason for replacing her with another employee. Ventura's position required a specialized skill set that a temporary employee was unable to provide.  During Ventura's absence, the department went through a succession of four temporary employees, none of whom was effective.  P&C's need to ensure the smooth operation of its office presents a legitimate

and nondiscriminatory explanation for its decision to replace Ventura.

Finally, Ventura has no evidence suggesting that her employer's proffered reason for replacing her was merely a pretext for age discrimination.  The only allegation she makes to support her claim is that PHS replaced her with a younger individual.  That fact, without more, is insufficient to cast doubt on PHS' rationale for its hiring decision.  See Mesnick, 950 F.2d at 823-24 ("It is not enough for a plaintiff merely to impugn the veracity of the employer's justification; he must elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: age discrimination.").

In sum, because Ventura has failed to state a prima facie case of age discrimination or offer any evidence of discriminatory animus, the Court will allow summary judgment with respect to her ADEA claim.

### b.    Americans with Disabilities Act (ADA)

The ADA prohibits an employer from discriminating against a qualified individual on the basis of disability in regards to job application, hiring, promotion or discharge.  42 U.S.C. § 12112(a).  To establish a prima facie case of disability discrimination under the ADA, a plaintiff must demonstrate that she was 1) disabled within the meaning of the Act, 2) able to

-11-

perform the essential functions of the position and 3) discharged as a result of her disability.  Ward v. Massachusetts Health Research Institute, Inc., 209 F.3d 29, 32-33 (1st Cir. 2000). For the reasons set forth below, Ventura has not made such a showing.

The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102(1)(A).  An individual may also demonstrate a qualifying disability by producing a record of her impairment or evidence that she is regarded as having such an impairment.  42 U.S.C. § 12102(1)(B-C).  If an individual demonstrates that she is disabled, the ADA requires that her employer provide "reasonable accommodations" unless such accommodations "would impose an undue hardship."  42 U.S.C. § 12112(b)(5)(A).

It appears that Ventura suffers from major depression, although it is difficult to evaluate her condition from the evidence in the record.  Other than a series of faxed doctor's notes referring to a vague "medical condition," Ventura has produced no medical records describing the nature of her diagnosis or its effects on her daily functioning.  She testified in her deposition that she struggles to work, stay awake, focus for long periods of time, socialize, drive, care for herself and do basic math but fails to offer any evidence that those

-12-

limitations resulted from her medical condition.[3]  Even when
viewed in the light most favorable to the plaintiff, there is
insufficient evidence in the record for the Court to find that
she is disabled.  See Zades v. Lowe's Home Centers, Inc., 446 F.
Supp. 2d 29, 42 (D. Mass. 2006) (holding that plaintiff's own
conclusory statement that she was disabled, without any medical
evidence documenting the condition or its effects, was
insufficient to establish a disability).

Nor can Ventura demonstrate that she was 1) qualified to
perform the essential functions of her position or 2) discharged
as a direct result of her alleged disability.  Under the ADA, the
plaintiff bears the burden of proving that, "with or without
reasonable accommodation," she "can perform the essential
functions" of her job.  Cleveland v. Policy Management Systems
Corp., 526 U.S. 795, 805 (1999).  If the employer asserts that
regular attendance is an essential function of the position, the
Court should conduct a fact intensive inquiry into the
plaintiff's attendance and the specific characteristics of the
job at issue.  Ward, 209 F.3d at 35.  Ventura's position requires
reliable, on-site attendance, substantial in-person
communications and the ability to handle projects that arise
unexpectedly.  As discussed in detail above, Ventura has failed

---

[3] The doctor's notes contain no information about the
precise nature of the plaintiff's diagnosis or its effect on her
daily functioning.

to demonstrate that she could perform the essential functions of that position, even with a reasonable accommodation.

The ADA does not require an employer to provide an accommodation that would create an undue hardship upon the business. 42 U.S.C. § 12112(b)(5)(A). Thus, while in some situations the ADA requires employers to provide extended medical leave, there is a point at which such leave becomes too long to remain reasonable. Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 650 (1st Cir. 2000) ("if ... allowing the sick employee to retain ... her job places the employer in a hardship situation where it cannot secure in some reasonable alternative way the services for which it hired the ailing employee, and yet is blocked from effecting a rehire, the ADA does not require the retention of the disabled person.").

Here, the evidence demonstrates that PHS granted Ventura 17 weeks of medical leave, during which time Hanitchak went without a full-time executive assistant. At the end of those 17 weeks, Ventura was still unable to provide PHS with any reliable indication of when she would return. Given the problems the office had experienced as a result of the succession of untrained, temporary employees and the uncertainty surrounding Ventura's return, requiring it to hold her position open indefinitely would have posed an undue hardship.

Finally, Ventura has not demonstrated that the defendants'

-14-

ultimate decision to hire a replacement was causally related to
her depression or any other medical condition.  The evidence
clearly demonstrates that Ventura was replaced as a result of her
failure to report to work when promised, not her alleged
disability.  An employer that terminates an employee for failure
to perform her job is not in violation of the ADA.  See Ward, 209
F.3d at 37-38; Leary v. Dalton, 58 F.3d 748 (1st Cir. 1995)
(finding that plaintiff was ultimately terminated because of his
unauthorized absence, not his disability); E.E.O.C. v. Amego, 110
F.3d 135, 149 (1st Cir. 1997) (affirming summary judgment where
employer proffered evidence that disabled employee could not meet
her job responsibilities).  Accordingly, PHS is entitled to
summary judgment on the plaintiff's ADA claim.

### c.   Title VII of the Civil Rights Act

Ventura's Title VII claim also lacks merit because she has
failed to allege that she was discriminated against on the basis
of sex, race, ethnicity, gender or national origin.  See 42
U.S.C. § 2000e-2(1).

### 3.   Additional Claims

As previously noted, Ventura, through various "motions" and
exhibits, alleges several other vague claims against the
defendants, ranging from violations of the Fair Labor Standards
Act to defamation of character and workplace hostility.  She does
not, however, set forth any specific facts that would support

-15-

those claims and, accordingly, the defendants are entitled to summary judgment as a matter of law.


### ORDER

In accordance with the foregoing, Defendants' motion for summary judgment (Docket No. 34) is **ALLOWED.**


**So ordered.**

                                   /s/ Nathaniel M. Gorton
                                  Nathaniel M. Gorton
                                  United States District Judge
Dated June 18, 2010